**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Case No. 26-cv-04166-NYW

JINLONG WANG,[1]

Petitioner,

v.

JUAN BALTAZAR, in his official capacity,
NATHAN RASPER, in his official capacity,[2]
MARKWAYNE MULLIN, in his official capacity,
DAVID VENTURELLA, in his official capacity, and
TODD BLANCHE, in his official capacity,

Respondents.

---

**ORDER**

---

This matter is before the Court on Petitioner's Motion to Enforce Judgment (the "Motion" or "Motion to Enforce"). [Doc. 11]. The Motion is fully briefed. [Doc. 13; Doc. 14]. For the reasons set forth below, the Motion is respectfully **GRANTED**.

**BACKGROUND**

Petitioner Jinlong Wang ("Mr. Wang" or "Petitioner") is a noncitizen who has been present in the United States since January 2020. [Doc. 1 at ¶ 18]. He was detained by United States Immigration and Customs Enforcement ("ICE") in the Denver International Airport on July 14, 2026. [*Id.* at ¶ 19]. On August 11, 2026, he received a bond hearing

---

[1] As previously noted, although both share the same surname, Petitioner is unrelated to the undersigned judicial officer.

[2] Pursuant to Fed. R. Civ. P. 25(d), Nathan Rasper is automatically substituted in as a Respondent as the current officeholder.

at which the immigration judge ("IJ") relied on Mr. Wang's testimony to find that he was a flight risk and denied bond. [*Id.* at ¶¶ 20, 23; Doc. 1-2]. Petitioner filed a Verified Petition for Writ of Habeas Corpus in September of 2026, challenging the legality of his detention. *See generally* [Doc. 1]. This Court granted the Petition in part on September 28, 2026 ("September 28 Order"). [Doc. 9 at 1, 11]. The Court ordered Respondents (or "the Government") to provide Mr. Wang a bond hearing no later than October 5, 2026, and further ordered that "[a]t the bond hearing, the Government must show by clear and convincing evidence that Petitioner is either a flight risk or a danger to the community." [*Id.* at 12].

A hearing was held on October 5, 2026. [Doc. 11-1 at 2]. The IJ denied bond, finding that "DHS has established by clear and convincing evidence that Respondent presents a risk of flight."[3] [*Id.* at 6]. Specifically, the IJ cited "the presently weak likelihood of success on Respondent's application for relief, his voluntary return to China . . . notwithstanding his ability to remain outside China, the absence of any claim . . . that Respondent was arrested or detained in China, and the absence of timely submitted evidence establishing countervailing ties or other circumstances sufficient to mitigate that risk" as the basis of her ruling. [*Id.*].

Mr. Wang filed the instant Motion to Enforce on October 8, 2026, arguing that the IJ failed to comply with this Court's September 28 Order, resulting in his continued unlawful detention. [Doc. 11 at 2]. Specifically, he argues: (1) Respondents violated this Court's order by requiring Mr. Wang to bear the burden to show he was not a flight risk

[3] The Court notes that Petitioner in this case is referred to as "Respondent" in the bond hearing proceeding. For consistency and clarity, the Court will refer to Mr. Wang as "Petitioner" or "Mr. Wang" in this Order.

or danger; (2) Respondents violated federal regulations by importing and considering evidence from Mr. Wang removal proceedings; and (3) Respondents committed regulatory and constitutional errors by preventing Mr. Wang's sister from attending the public bond hearing. [*Id.*]. He asks that this Court enter an order directing his immediate release. [*Id.*].

## ANALYSIS

"Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose . . . submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Anderson v. Dunn*, 19 U.S. 204, 227 (1821)).

Although the INA provides that "[t]he Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review" and "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien," 8 U.S.C. § 1226(e), this statute "only bars review of the Attorney General's 'discretionary judgment,'" *Mendez v. Dedos*, No. 1:26-cv-00394-KG-JHR, 2026 WL 973077, at *2 (D.N.M. Apr. 10, 2026) (quoting *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)). "Whether [a petitioner] received the due process to which he was entitled 'is not a matter of discretion' and is subject to judicial review." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001)); *see also Castillo v. Field Off. Dir.*, No. 25-cv-25296, 2025 WL 4689387, at *5 (S.D. Fla. Dec. 19, 2025) ("Courts have repeatedly concluded that § 1226(e) does not preclude challenges to the procedures used in custody determinations under § 1226." (collecting cases)).

Thus, while the Court cannot "serv[e] as an appellate court over an IJ's bond decision," the Court may "assess[] whether the IJ applied the legal standard prescribed by this Court and otherwise followed the Court's directives." *Quiroz Zacarias v. Mullin*, No. 26-cv-00574-WJM, 2026 WL 1092162, at *3 (D. Colo. Apr. 22, 2026). In this Order, the Court does not weigh the evidence before the immigration judge or act as an appellate court conducting a review of the IJ's ultimate determination. Instead, the Court will "review the nature and structure of the [IJ's decision] for the minimal indicia of due process." *Lopez v. Paulk*, 830 F. Supp. 3d 1356, 1368 (M.D. Ga. 2026).

Mr. Wang argues that the IJ failed hold the Government to the clear and convincing evidentiary burden ordered by this Court. He asserts that his bond hearing failed to comply with this Court's September 28 Order for following reasons: (1) DHS "provided no evidence or arguments to sustain [its] burden"; and (2) the IJ improperly based her decision on "the presently weak likelihood of success" of his asylum application (which itself was introduced to the bond record by the IJ sua sponte) and Mr. Wang's failure to submit countervailing evidence to mitigate a flight risk. [Doc. 11 at 3–4; Doc. 11-1 at 6]. Petitioner thus contends that his continued detention is unlawful. This Court respectfully agrees.

"The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." *Addington v. Texas*, 441 U.S. 418, 423 (1979) (quotation omitted). "To prove a fact by clear and convincing evidence is a heavy burden that equates to showing the fact is 'highly probable.'" *United States v. Dear*, 104

F.4th 145, 147 (10th Cir. 2024) (quoting *Florida v. Georgia*, 592 U.S. 433, 438–39 (2021)). Despite acknowledgement of the Government's burden in the written order, there is little indication that the IJ held the Government to this applicable standard. *Akinsanya v. Garland*, 125 F.4th 287, 297 (1st Cir. 2025) ("Merely stating the proper standard does not discharge the obligation to correctly apply the standard."). The IJ's assertions that she complied with this Court's order do not overcome the plain deficiencies on the face of her order. *Arredondo v. Baltazar*, No. 25-cv-03040-RBJ, 2025 WL 5236084, at *3 (D. Colo. Dec. 18, 2025) (granting motion to enforce even though the IJ's decision stated that DHS bore the burden by clear and convincing evidence).

In her order denying custody redetermination, the IJ relied on the following three considerations: (1) Petitioner's pending asylum application was "presently weak," (2) Petitioner's asylum application did not include allegations of arrest or detention in China, and (3) Petitioner did not timely submit evidence mitigating that he is a flight risk. [Doc. 11-1 at 6]. While the immigration judge is not limited to only considering evidence presented by the Government when determining the appropriateness of bond, the "strength or paucity" of other evidence "cannot substitute for the government's obligation to establish danger or flight risk by clear and convincing evidence in the first instance." *Arredondo*, 2025 WL 5236084, at *4. "Only after the IJ is satisfied that the evidence proffered by DHS, standing on its own, establishes 'a firm belief or conviction' that release on bond is not warranted should the court consider whether the noncitizen's evidence sufficiently rebuts, mitigates, or undermines the government's showing." *Id.* Moreover, any evidence an immigration judge considers must be "probative and specific." *Matter of Guerra*, 24 I. & N. Dec. 37, 40–41 (BIA 2006). This Court is not persuaded that DHS's

evidence, standing alone, satisfies its clear and convincing burden. The Court is also not convinced that the sole piece of evidence DHS did proffer was probative and specific enough to be considered.

Mr. Wang asserts, and Respondents do not refute, that DHS "submitted no evidence and presented no arguments to sustain [its] burden" other than Mr. Wang's brief testimony regarding his two prior lawful entries into the United States. [Doc. 11 at 5; Doc. 13 at 1 ("Respondents are not submitting a brief in opposition to the Motion")]. Petitioner also claims that during the hearing, DHS did not provide argument as to how the testimonial evidence it elicited demonstrated that Mr. Wang was a flight risk. [Doc. 11 at 5–6]. Indeed, the IJ's written ruling references DHS's questions regarding "whether [Mr. Wang] had traveled back to China" but does not otherwise cite to any affirmative evidence presented by DHS indicating that Mr. Wang was a flight risk. [Doc. 11-1 at 4]. Instead, the only Government argument referenced in the IJ's ruling was that "[Mr. Wang] submitted no documentary evidence addressing the traditional Guerra factors at the present bond hearing." [*Id.* at 5].

It is unclear to the Court whether the evidence presented by DHS, establishing that Mr. Wang entered the United States twice on lawful tourist visas and subsequently filed for asylum, standing alone, satisfies the clear and convincing burden. *See Arredondo*, 2025 WL 5236084, at *6 (ruling that the IJ did not adhere to burden allocation ordered by the court since the IJ's decision "never clearly identifie[d] what affirmative proof submitted by DHS satisfied th[e] burden in the first instance"); *Kumar v. Warden of the Golden State Annex Det. Facility*, No. 1:26-cv-00035-KES-CDB, 2026 WL 2078191, at *5–6 (E.D. Cal. July 17, 2026) (granting the petitioner's motion to enforce because the government did

not "submit any evidence bearing on flight risk, and the immigration judge did not make any findings that could support her bare conclusion that [t]he Department has proven by clear and convincing evidence" that the petitioner was a flight risk (quotation omitted)); *see also Jarquin v. Baltazar*, No. 26-cv-02726-RMR, 2026 WL 2184936, at *2 (D. Colo. July 29, 2026) (holding that the IJ's reliance on a sole piece of evidence introduced by the petitioner rendered it difficult for the court to discern whether DHS met its evidentiary burden); *Molina v. Joyce*, No. 25-cv-01844-LAK, 2026 WL 2731633, at *3 (S.D.N.Y. Sept. 16, 2026) ("[T]he government could not possibly have met its burden . . . from its utter failure to argue the point.").

Moreover, "[s]ince *Matter of Guerra*, several federal courts have used the 'probative and specific' evidence requirement to determine whether [an] IJ's bond determinations comport with due process constraints." *Bayani v. LaRose*, No. 26-cv-00266-JES-VET, 2026 WL 1270059, at *6 (S.D. Cal. May 8, 2026) (quoting *Garcia v. Hyde*, 817 F. Supp. 3d 112, 128 (D.R.I. 2025)). The Court is unable to discern whether the sparse testimony of Mr. Wang's entrances into the United States, without explanation, constitutes "probative and specific" evidence that the IJ could properly rely on to find that the Government met its burden to show flight risk. *See, e.g.*, *Garcia*, 817 F. Supp. 3d at 128 (finding that the IJ violated petitioner's due process rights by relying on a ten-year-old warrant, which was not probative and specific, to find flight risk).

Not only did DHS fail to introduce any real evidence bearing on flight risk, the language in the IJ's written order indicates that she improperly placed the burden on Petitioner. Specifically, the IJ noted that Mr. Wang "did not timely submit evidence establishing a fixed residence, employment history, family or community ties, financial

support, or other circumstances tending to mitigate flight risk," ultimately including this deficiency as one of the bases for her decision. [Doc. 11-1 at 5]. Setting aside the issue as to whether the evidence presented by Mr. Wang was properly rejected, an immigration court fails to hold the government to its clear and convincing burden when it bases the denial of bond on the petitioner's failure to provide mitigating evidence without first establishing the government has fulfilled its obligation. *See Jimenez Chauca v. Mullin*, No. 26-cv-00864-GPG, ECF No. 22 at 3 (D. Colo. Apr. 9, 2026) (finding the IJ failed to hold the government to its burden when the IJ's language and the procedure of the hearing indicated that the IJ placed the burden on the petitioner instead); *Molina*, 2026 WL 2731633, at *4 (finding that although the IJ mentioned the correct standard of proof, the language used by the IJ made it unclear whether the IJ actually held the government to that standard).

Finally, it is clear to the Court that the IJ primarily based her ruling on evidence not introduced by the Government—namely, the purported weakness of Petitioner's pending asylum application. *See* [Doc. 11-1 at 6 ("[T]he weakness of the presently documented [asylum] claim is one significant factor bearing upon his incentive to appear and to comply with any final order.")]. As a preliminary matter, "new evidence solicited by the Immigration Judge *sua sponte*" does not relieve the government of its burden to prove flight risk with clear and convincing evidence. *Du v. Chestnut*, No. 1:26-cv-01435-DJC-CSK, 2026 WL 2642314, at *2 (E.D. Cal. Sept. 8, 2026) ("Where DHS bears the burden to show flight risk or danger by clear and convincing evidence, the Immigration Judge cannot rely on arguments that DHS did not present to find that DHS successfully met their clear and convincing burden."). The IJ afforded "significant weight to Respondent's

voluntary return to China shortly before the entry upon which his asylum application is based." [Doc. 11-1 at 4]. However, nothing in the record suggests that DHS introduced any part of Mr. Wang's asylum application as evidence, nor did DHS provide any argument as to how Mr. Wang's temporary return to China was relevant to flight risk. The IJ further emphasized that the asylum application is weak because of the "absence from his application of any allegation that he was arrested, detained, or ever physically harmed in China," which in turn contributed "substantial weight" to the IJ's flight risk finding. [*Id.* at 5]. Once again, the record suggests that such postulation regarding the strength of Petitioner's asylum application occurred sua sponte by the IJ, *not* following evidence or argument presented by DHS. While it was "not improper" for the IJ to speculate about the likelihood of success on a petitioner's asylum application, *Gutierrez Sequiera v. Mullin*, No. 5:26-cv-02243-SPG-KS, 2026 WL 2871268, at *3 (C.D. Cal. Sept. 23, 2026), such evidence observed sua sponte cannot absolve the Government of its burden, *see N.A. v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03007-MBK, 2026 WL 1045196, at *9 (C.D. Cal. Apr. 15, 2026) ("[A]n IJ cannot simply presume that unresolved claims are . . . indicative of flight risk, absent the Government making a specific showing that the nature or strength of the claims make the noncitizen unlikely to appear at future court proceedings. [An IJ does not have license] to speculate reasons, untethered from DHS's arguments or the record, why Petitioner may not prevail on his asylum claim."), *appeal docketed*, No. 26-3901 (9th Cir. June 17, 2026).

Throughout her decision, the IJ construed evidence, or the absence of evidence, against Petitioner to show that he is a flight risk even though DHS presented no evidence or argument to support this finding. It is clear to the Court that Petitioner's bond hearing

was not compliant with this Court's Order. For these reasons, Petitioner's Motion to Enforce is **GRANTED**.

In fashioning an appropriate remedy in similar cases, some courts have ordered a second bond hearing employing the constitutionally required standards. *See, e.g.*, *Arredondo*, 2025 WL 5236084, at *6; *Bayani v. LaRose*, No. 26-cv-00266-JES-VET, 2026 WL 1270059, at *8 (S.D. Cal. May 8, 2026); *Castillo*, 2025 WL 4689387, at *7; *Lopez*, 830 F. Supp. 3d at 1374. Others have ordered the petitioner's immediate release. *See, e.g.*, *Quiroz Zacarias*, 2026 WL 1092162, at *5; *Garcia Diaz v. Mattos*, No. 2:26-cv-00926-RFB-BNW, 2026 WL 1270816, at *7 (D. Nev. May 9, 2026); *Perez Sierra v. Margolin*, No. 25-cv-18829, 2026 WL 800158, at *4 (D.N.J. Mar. 23, 2026); *Garcia Ortiz v. Henkey*, No. 1:26-cv-00043-BLW, 2026 WL 948275, at *4 (D. Idaho Apr. 7, 2026); *Mendez*, 2026 WL 973077, at *2.

Upon review of this record and considering all the circumstances of this case, the Court finds that immediate release is warranted. In its September 28 Order, the Court directed Respondents to provide Petitioner a bond hearing and ordered that, if Petitioner was not given a bond hearing, he must be "immediately release[d] . . . from custody." [Doc. 9 at 11]. Implicit in the Court's ordering of a bond hearing is that the bond hearing must comply with constitutional requirements. Mr. Wang has now been unconstitutionally detained for nearly four months. And even after this Court ruled that Petitioner's constitutional rights had been violated, his due process rights were violated *again* at the deficient bond hearing. The Court sees no reason to order another bond hearing—and risk a third constitutional violation—prolonging the detention that this Court has already determined is unlawful. *See Quiroz Zacarias*, 2026 WL 1092162, at *5 (ordering

immediate release and recognizing that "[r]equiring [the petitioner] to undergo yet another" bond hearing "would only add further insult to the constitutional injury to which Petitioner has already been subjected"); *Mendez*, 2026 WL 973077, at *2 (granting immediate release where the bond hearing did not comply with the court's order). In these circumstances, the Court finds that immediate release is appropriate and warranted.

Having granted Petitioner's desired remedy, the Court need not address Petitioner's other arguments.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1) Petitioner's Motion to Enforce Judgment [Doc. 11] is **GRANTED**;

(2) Respondents **SHALL RELEASE** Mr. Wang within **48 hours** of the issuance of this Order **with all his personal belongs, without being subject to any conditions beyond any conditions of supervision or release that existed prior to the current detention, and without re-detention prior to the entry of a final order of removal unless Respondents demonstrate, by clear and convincing evidence at a pre-deprivation hearing before a neutral arbiter, that Petitioner is a danger to the community or flight risk**; and

(3) On or before **November 11, 2026,** the Parties shall file a joint status report confirming Mr. Wang's release and informing the Court whether further proceedings are required in this case.

DATED: November 4, 2026

BY THE COURT:

Nina Y. Wang

United States District Judge